## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

In re

TEMPNOLOGY, LLC

Debtor.

Bk. No. 15-11400 (BAH)

Chapter 11

## MOTION OF THE DEBTOR FOR ENTRY OF INTERIM AND FINAL ORDERS: (I) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING; (II) AUTHORIZING THE USE OF CASH COLLATERAL; (III) GRANTING ADEQUATE PROTECTION; AND (IV) SCHEDULING A FINAL HEARING

Tempnology, LLC (the "Debtor"), as a debtor and debtor-in-possession, respectfully states as follows:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND

2.      On the date hereof (the "Petition Date"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Hampshire (the "Court").  The Debtor continues to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of an examiner has been made in these chapter 11 cases.

3.      Based in Portsmouth, New Hampshire, the Debtor is a material innovation company, with the front-facing brands of Coolcore and Dr. Cool.   Coolcore, the global leader in chemical-free cooling fabrics, has partnerships to develop fabrics for consumer brands

throughout the world.  Dr. Cool is a consumer goods brand based on the foundation of chemical-free cooling products.

4.      Additional information regarding the Debtor's business, capital structure and circumstances leading to this chapter 11 filing is set forth in more detail in the *Declaration of Kevin McCarthy in Support of Debtor's First Day Pleadings* (the "First Day Declaration"), which is fully incorporated herein by reference.

## RELIEF REQUESTED

5.      The Debtor hereby moves (the "Motion"), by and through its undersigned counsel, for entry of an interim order on an expedited basis and substantially in the form attached hereto as **Exhibit A** (the "Interim Order"), and, following a final hearing to be scheduled by the Court (the "Final Hearing"), entry of a final order (the "Final Order") substantially in the form attached hereto as **Exhibit B**, pursuant to sections 105, 361, 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the District of New Hampshire (the "Local Rules"), as more fully detailed below.  In support of the relief sought in the Interim Order and Final Order, the Debtor respectfully represents:

**I.      Summary of the Relief Requested Herein**

6.      By this Motion,[1] the Debtor seeks entry of the Interim Order, granting the following relief on an interim basis, and a Final Order (together, such orders are sometimes referred to herein as the "DIP Financing Orders"):

---

[1]      Each capitalized term used but not otherwise defined herein shall have the meaning ascribed to it in the DIP Credit Agreement (as defined below) or the DIP Financing Orders (as defined below), as applicable.  In the event of an inconsistency between the descriptions contained herein and the DIP Credit Agreement, the terms
*(Footnote continued on next page)*

*Use of Cash Collateral and the DIP Facility*

      (a)    Authorizing the Debtor to obtain, and be obligated in respect of, a senior secured priming revolving loan credit facility in an amount of up to $6,850,000.00 (the "Revolving Facility") from Schleicher & Stebbins Hotels L.L.C. ("S&S" or the "Lender") under that certain Post-Petition Loan and Security Agreement in substantially the form attached hereto as **Exhibit C** (the "DIP Credit Agreement"), in accordance with the terms of the DIP Financing Orders;

      (b)    authorizing the Debtor to execute and enter into the DIP Credit Agreement and the other "Loan Documents" (as defined in the DIP Credit Agreement; the DIP Credit Agreement and such other Loan Documents being referred to herein collectively as the "DIP Documents") and to perform such other and further acts as may be required in connection with the DIP Documents;

      (c)    granting the Lender valid priming first priority perfected liens, subject only to the Carve-Out (as defined in the DIP Financing Orders) and certain permitted liens permitted by the prepetition credit documents, on substantially all of the Debtor's assets (the "DIP Liens") to secure the Debtor's obligations under the DIP Documents (the "DIP Obligations");

      (d)    granting the Lender superpriority administrative claim status pursuant to section 364(e)(1) of the Bankruptcy Code, in respect of the DIP Obligations (the "DIP Superpriority Claim"), subject only to the Carve-Out;

      (e)    authorizing the Debtor to use all cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code) in which S&S has an interest (the "Cash Collateral"), in accordance with the terms of the DIP Financing Orders;

      (f)    granting Lender, as the Debtor's prepetition secured lender , for, among other things, the use of Cash Collateral, certain adequate protection, including the Pre-Petition Replacement Liens, the Adequate Protection Priority Claim and the Adequate Protection Payments (each as defined in the DIP Financing Orders) as described in the DIP Financing Orders;

*Modifying the Automatic Stay*

of the DIP Credit Agreement shall control.  In the event of an inconsistency between the DIP Credit Agreement and the DIP Financing Orders, the DIP Financing Orders shall control.

(g)     modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Credit Agreement and the DIP Financing Orders; and

***Final Hearing***

(h)     scheduling a Final Hearing to consider entry of the Final Order and approving the form of notice with respect to the Final Hearing.

## Preliminary Statement

7.      The Debtor respectfully submits that approval of the proposed DIP Credit Agreement is critical to its ability to continue to operate as a going concern, to preserve and protect the value of its assets and operations for the benefit of its stakeholders and, in furtherance thereof, to provide the Debtor with the financial wherewithal to consummate the proposed sale of substantially all of its assets.  As discussed more fully below, the Debtor requires immediate access to working capital to fund and support ordinary business expenditures, including payroll and employee benefits and other overhead expenses.  Absent immediate and uninterrupted access to adequate financing, the Debtor will not have sufficient liquidity to sustain ordinary business operations and would be forced to liquidate, to the detriment of its creditors and estate.

8.      Receiving access to the DIP Facility, and use of Cash Collateral, will provide the Debtor with the vital liquidity it needs to sustain ordinary business operations pending the proposed asset sale.

9.      As more fully set forth below, the Debtor submits that the financing arrangements proposed herein are reasonable and necessary, serve the best interests of the Debtor's creditors and estate and should be approved in all respects.

- 4 -

## Concise Statement of Financing Terms

10.     In accordance with Bankruptcy Rule 4001, below is a summary of the terms of

the proposed financing arrangements:[2]

> (a)     <u>Obligated Parties</u>:  The Debtor is the Borrower.
>
> (b)     <u>Lender</u>:  Schleicher & Stebbins Hotels L.L.C. is the Lender.
>
> (c)     <u>Amount and Type of Facility</u>:  A senior secured priming revolving loan credit facility in an amount of up to $6,850,000.00.
>
> (d)     <u>Availability</u>:  The Debtor seeks authority to immediately borrow and use, pursuant to the DIP Credit Agreement and the other DIP Documents, the DIP Facility, only in accordance with the Budget, a copy of which is attached hereto as **<u>Exhibit D</u>**.  For the purposes of the immediate relief sought by the Debtor, the Debtor is seeking authority to borrow $500,000 for the period ending on September 23, 2015.
>
> (e)     <u>Use of Proceeds</u>:  Upon the entry of a Final Order, the proceeds of the DIP Credit Facility are to be used in a manner consistent with the terms and conditions of the DIP Credit Agreement, and in accordance with the Budget exclusively for the following purposes: (A) repay the Pre-Petition Revolving Loans (defined below), (B) for working capital and operational expenses and other lawful purposes as permitted under the DIP Credit Agreement and to the extent set forth in the Budget, (C) payment of costs of administration of the Case, and (D) payment of such prepetition expenses as contemplated in the Budget or as consented to by the Lender in its sole discretion and as approved by the Bankruptcy Court.  Prior to the entry of the Final Order, the proceeds of the DIP Credit Facility authorized under the Interim Order are to be used in a manner consistent with the Budget and for purposes set forth in (B), (C) and (D) of this paragraph.
>
> (f)     <u>Priority and Security</u>:  As security for the full and timely payment and performance of all of the DIP Obligations, the Lender is granted the DIP Liens.  The DIP Obligations also shall be treated as superpriority administrative expense claims, pursuant to

---

[2]     The summaries and descriptions of the terms and conditions of the DIP Agreement and the Interim DIP Financing Orders set forth in the Motion are intended solely for informational purposes to provide the Court and parties in interest with an overview of the significant terms thereof.  The summaries and descriptions herein are qualified in their entirety by the terms of the DIP Agreement and the DIP Financing Orders.

4827-6385-8215.5

section 364(c)(1) of the Bankruptcy Code, subject to the Carve-Out.

(g)  Maturity/Termination Date:  All (i) DIP Obligations of the Debtor shall be immediately due and payable, and (ii) authority to use the Cash Collateral shall cease, on the date (the "Commitment Termination Date") that is the earliest to occur of: (i) November 20, 2015; (ii) the effective date of any plan of reorganization for the Debtor confirmed pursuant to Bankruptcy Code section 1129; (iii) the date of consummation of a sale of all or substantially all of the Debtor's assets pursuant to section 363 of the Bankruptcy Code; or (iv) the occurrence of a "Maturity Event" as defined in the DIP Credit Agreement..

(h)  Interests Rate and Interest Period:  Interest will accrue at a rate equal to the Wall Street Journal Prime Rate plus one half of one percent (0.5%) per annum.

(i)  Default Rate:  There is no Default Rate of Interest under the DIP Agreement.

(j)  Carve-Out:  As used in the DIP Financing Orders, the "Carve Out" means: (a) allowed administrative expenses pursuant to 28 U.S.C. Section 1930 (a)(6); and (b) unpaid reasonable fees and expenses allowed or incurred and subsequently permitted to be paid by an order of the Bankruptcy Court (with the expenses set forth in clause (a), collectively, the "Carve Out Expenses") of attorneys and financial advisors employed by the Debtor and the official committee(s) of creditors pursuant to Sections 327 and 1103 of the Bankruptcy Code (the "Case Professionals"), up to a maximum aggregate amount of $400,000.00 (the "Carve Out Amount"), provided, however, that Carve Out Expenses actually paid to any Case Professional shall reduce the Carve Out Amount on a dollar-for-dollar basis.  Any obligation of the Lender to fund or otherwise pay the Carve Out, including allowed professional fees, shall be added to and made a part of the DIP Obligations, secured by the Collateral, and the Lender shall be entitled to all of the rights, claims, liens, priorities and protections under any orders approving the DIP Credit Agreement and DIP Obligations, the DIP Credit Agreement, the Bankruptcy Code, or applicable law in connection therewith.

(k)  Conditions Precedent:  The conditions precedent to borrowing under the DIP Facility include customary conditions precedent and also require the entry of the Interim Order.

- 6 -

(l)     <u>Covenants</u>: The DIP Credit Agreement contains affirmative, negative and financial reporting covenants customary for facilities of this nature.

(m)     <u>Events of Default/Termination Events</u>: Numerous Events of Default relating to the DIP Credit Agreement are set forth in section 15 of the DIP Credit Agreement.

(n)     <u>Waiver or Modification of the Automatic Stay</u>: Subject to five (5) business days' prior notice, the automatic stay will be vacated in the event of an Event of Default under the Interim Order to permit the exercise of remedies by the Lender; *provided*, *however*, that during such five (5) business day period, the Debtor shall be entitled to seek an emergency hearing contesting that an Event of Default has occurred.

(o)     <u>Amount of Cash Collateral to Be Used</u>. The Debtor seeks to use Cash Collateral in an amount consistent with the expenditures described in the Budget, subject to permitted variances as set forth in the Interim Order and DIP Credit Agreement.

(p)     <u>Party with an Interest in Cash Collateral</u>. The party with an interest in the Cash Collateral is the Lender.

(q)     <u>Use of Cash Collateral</u>. The Lender has consented to the Debtor's use of Cash Collateral in accordance with the terms of the Interim Order and the Budget.

(r)     <u>Adequate Protection for the Lender</u>. As adequate protection for the interest of the Lender in the Prepetition Collateral (including the Cash Collateral) on account of the Debtor's use of Cash Collateral and any decline in value arising out of the automatic stay, the Debtor's use, sale, depreciation, or disposition of the Prepetition Collateral or any other reason during this case, the Lender shall receive adequate protection in the form of Pre-Petition Replacement Liens, the Adequate Protection Priority Claim and the Adequate Protection Payments.

(s)     <u>Automatic Perfection</u>. The DIP Liens and the Pre-Petition Replacement Liens granted in the DIP Credit Agreement, the Interim Order and the Final Order shall be valid and automatically perfected without the necessity of filing or recording any financing statement, deed of trust, mortgage, security agreement, notice of lien, or other instrument or document that may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or securities account control

- 7 -

agreement) to validate or perfect the DIP Liens or the Pre-Petition Replacement Liens or to entitle the DIP Liens or the Pre-Petition Replacement Liens.

## Disclosures

11.     Pursuant to Bankruptcy Rule 4001(d) and Local Rule 4001-2, a debtor in possession seeking authority to obtain financing must disclose the presence and location of certain provisions contained in the documentation evidencing the financing.  The debtor in possession must also justify the inclusion of such provisions.  Set forth below are the disclosures required in accordance with such rules:

(a)     Local Rule 4001-2(c)(1) requires a debtor to disclose whether it has granted cross-collateralization to prepetition secured creditors in connection with the debtor's cash collateral usage or additional financing.  **The proposed Interim Order does not provide for the granting of cross-collateralization protection to the Lender.**

(b)     Local Rule 4001-2(c)(2) requires the disclosure of provisions or findings of fact that (i) bind the estate or other parties in interest with respect to the validity, perfection or amount of the secured creditor's prepetition lien or (ii) the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the order and the Committee at least sixty (60) days from the date of its formation to investigate such matters.  **The Debtor proposes to stipulate as to the amount, validity and priority of the Lender's prepetition claims and liens.  The Debtor also proposes to waive certain rights and causes of action and grant releases in favor of the Lender as to any and all prepetition claims (including the Debtor's rights under section 506(c) of the Bankruptcy Code but only upon entry of the Final Order).  Interim Order at ¶ D. The Interim Order provides parties in interest with requisite standing an investigation period that expires no later than two business days prior to the Auction Date to be scheduled in accordance with the proposed Bid Procedures Order pending before this Court.  Interim Order at ¶ 7.**

(c)     Local Rule 4001-2(c)(3) requires the disclosure of provisions that seek to waive a debtor's rights without notice under section 506(c) of the Bankruptcy Code.  **The proposed Interim Order (subject to the entry of the Final Order) contains a waiver of the right**

- 8 -

to surcharge any Prepetition Collateral or Collateral under section 506(c) of the Bankruptcy Code.

(d)     Local Rule 4001-2(c)(4) requires disclosure of provisions that immediately grant to the prepetition secured creditor liens on the debtor's claims and causes of action arising under sections 544, 545, 547, 548 and 549 of the Bankruptcy Code. **The proposed Interim Order provides for the granting of liens on the proceeds of avoidance actions pursuant to chapter 5 of the Bankruptcy Code ("Avoidance Actions") pending entry of the Final Order. Interim Order at ¶ 2(e)(i).**

(e)     Local Rule 4001-2(c)(5) requires disclosure of provisions that deem prepetition secured debt to be postpetition debt or use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditors' prepetition debt (other than as provided in section 552(b) of the Bankruptcy Code). **The Interim Order provides that, upon entry of the Final Orderthe Debtor shall request an advance in an amount sufficient to repay the Pre-Petition Debt, and immediately shall use such amount to repay the Pre-Petition Debt indefeasibly, unavoidably and in full. Interim Order at ¶G.**

(f)     Local Rule 4001-2(c)(6) requires disclosure of provisions that provide disparate treatment for the professionals retained by a creditors' committee from those professionals retained by the debtor with respect to a professional fee carve-out. **The Carve-Out does not provide for disparate treatment to professionals. Interim Order at ¶ 8.**

(g)     Local Rule 4001-2(c)(7) requires disclosure of provisions that provide for the priming of any secured lien without the consent of that lienholder. **The proposed Interim Order does not provide for the priming of any secured lien without the consent of that lienholder. The Lender consents to the relief requested herein.**

**(h)**     Local Rule 4001-2 (c)(8) requires a declaration that the order does not impose lender liability on any secured lender. **The proposed Interim Order does not impose lender liability on any secured lender.**

(i)     Local Rule 4001-2(c)(9) requires disclosure of provisions that constitute a waiver or modification of the automatic stay. **The proposed Interim Order, at paragraph 17(b)(ii), describes the modification of the automatic stay in the event of an occurrence of an Event of Default under the DIP Agreement.**

- 9 -

## II.      The Debtor's Secured Debt

### A.      Secured Prepetition Debt

12.      In 2013, the Debtor entered into a Loan and Security Agreement (the "Existing Security Agreement") and, in accordance therewith, executed and delivered a Revolving Line of Credit Note (the "Existing Note" together with the Existing Security Agreement, the "Pre-Petition Credit Agreement"); both the Existing Security Agreement and the Existing Note being dated June 4, 2013 and evidencing a loan in the original principal amount of $350,000 from People's United Bank to Borrower (the "Existing Revolving Loan" or the "Pre-Petition Revolving Loans").

13.      In connection with the Existing Revolving Loan, People's United Bank held the Existing Security Agreement, the Existing Note, and a UCC Financing Statement filed with the New Hampshire Secretary of State, File # 130610685869 ("UCC"), and all of the other documents executed in connection therewith (the "Existing Loan Documents").

14.      To secure its obligations to People's United Bank under the Existing Security Agreement, the Debtor granted People's United Bank a security interest and liens in and to certain collateral of the Debtor as described in the Existing Security Agreement and UCC, as security for the payment, performance and satisfaction of all of the Debtor's financial liabilities and other obligations to People's United Bank on account of, or arising from, out of or incidental to the Existing Revolving Loan (the "Pre-Petition Liens" and "Existing Secured Claims").

15.      On July 31, 2014, pursuant to a Purchase and Sale Agreement and Assignment and separate Assignment, by and between People's United Bank and the Lender, Lender purchased and was assigned the Existing Loan, including the Pre-Petition Liens, Existing Secured Claims, the Existing Loan Documents, rights in the Collateral and all of the other

Purchased Loan Assets (as defined in the Purchase and Sale Agreement and Assignment) and all privileges, remedies, rights, title and interest therein or thereto.  A UCC amendment on Form UCC-3 assigning all of People's United Bank's rights and interest in the UCC to the Lender as the secured party of record with respect to People United Bank's secured interest in the Collateral has been recorded with the New Hampshire Secretary of State, File #140804997892.

16.     Thereafter the Debtor and Lender entered into a Second and Third Allonge to Existing Revolving Line of Credit Note dated July 31, 2014 and March 25, 2015, respectively. By the Second Allonge, the term of the Existing Note was extended to July 1, 2015 and the Existing Revolving Loan Amount was increased to $2,500,000.00.  By the Third Allonge, the term of the Existing Note was further extended to December 31, 2015 and the Existing Revolving Loan Amount was increased to $4,000,000.00.

17.     On July 16, 2015, the Lender asserted a payment default under the Existing Loan Documents and terminated its obligation to provide further financing under the Existing Loan Documents.

18.     On July 17, 2015, the Debtor and the Lender entered into a Forbearance Agreement (as subsequently modified or amended, the "Forbearance Agreement"), which provided that Lender would forbear in pursuing its remedies until August 28, 2015 and increasing the availability under the Existing Revolving Agreement to $5,200,000.000.   In accordance with the Forbearance Agreement and the Fourth Allonge, the Existing Revolving Loan Amount was increased to $5,200,000.00.

19.     On August 17, 2015, the Debtor and the Lender entered into the Amended and Restated Forbearance Agreement which increased the availability under the Existing Revolving Agreement to $5,550,000.00.   In accordance with the Amended and Restated Forbearance

- 11 -

Agreement and the Fifth Allonge, the Existing Revolving Loan Amount was increased to $5,550,000.00.

20.     There is presently due and owing to Lender under the Pre-Petition Credit Agreement and Pre-Petition Revolving Loans/Existing Revolving Loan $5,550,000.00 in principal amount and $94,525.00 accrued interest thereon, plus certain additional costs and expenses of Lender (the "Pre-Petition Debt").

## III.    Proposed Debtor-in-Possession Financing

### A.    The Critical Need for Post-Petition Financing

21.     The Debtor has an immediate need for post-petition financing under the DIP Credit Agreement to continue to finance its post-petition operations and pay administrative expenses.  Such financing is critical to preserve the going concern value of the Debtor's assets, thereby maximizing the returns to all creditors and stakeholders that will be obtained from the contemplated Sale of the Debtor's assets.

22.     Because virtually all of the Debtor's assets are encumbered by prepetition liens in favor of the Lender, the Debtor has no unencumbered funds with which to pay ongoing wages, salaries and day-to-day operating expenses, all of which are vital to sustain normal course business operations.  Due to the nature of the Debtor's operations, which are dependent upon uninterrupted access to necessary working capital, the Debtor's immediate access to funds under the DIP Credit Agreement is essential to prevent irreparable harm to the Debtor's estate.  The DIP Credit Agreement also is necessary to provide assurance to employees and other parties that they will be paid on a timely basis for post-petition services.  Without access to the DIP Facility, the Debtor's operations could come to a halt, a result that would be devastating as the Debtor's attempt to maximize the going concern value of their assets through an expedited sale process.

- 12 -

23.     The Debtor also submits that, other than the DIP Credit Agreement, there are no viable financing alternatives available to it under the circumstances.  In that regard, prior to the Petition Date, the Debtor and its advisors contacted alternative sources of post-petition financing, but no viable alternative financing was forthcoming.  The Debtor is unable to obtain alternative post-petition financing through credit allowable as an administrative expense, or credit secured by liens on the Debtor's assets junior to the Lender's liens and the Debtor has neither the money nor the time to engage in a potentially difficult and protracted priming contest with the Lender, the results of which would be uncertain.  Any uncertainty occasioned by protracted financing litigation would be extremely damaging to the Debtor, immediately jeopardizing its chapter 11 goals.

24.     Under these circumstances, the Debtor, in the exercise of its considered business judgment, has determined that the DIP Credit Agreement is the only financing available to it and provides the Debtor with necessary liquidity to maintain the going concern value of their business pending the culmination of the Debtor's proposed sale process.

25.     The DIP Credit Agreement, which is the product of arm's length negotiations between the Lender and the Debtor, provides the Debtor with continued financing pursuant to (a) the terms of the DIP Credit Agreement and the other DIP Documents, (b) the operating Budget annexed to the Interim Order as Exhibit B and (c) the terms of the proposed Interim Order (pending approval of the DIP Credit Agreement on a final basis at the Final Hearing).

26.     The Debtor believes that the terms of the DIP Credit Agreement are reasonable and fair under the circumstances and, therefore, that the financing provided under the DIP Credit Agreement serves the best interests of the Debtor, its creditors and the estate.

4827-6385-8215.5

**B.**     **Use of Cash Collateral and Proposed Adequate Protection**

27.     In connection with the proposed DIP Credit Agreement, the Debtor requires and requests authorization, pursuant to sections 363(c)(2) and (e) of the Bankruptcy Code, to continue using cash receipts and equivalents constituting the Lender's Cash Collateral in accordance with the Budget.

28.     Pursuant to the Interim Order, as adequate protection for any decrease in the value of its interests in the Prepetition Collateral (including the Cash Collateral) resulting from the automatic stay, from the Debtor's use, sale, or lease of the Prepetition Collateral (including the Cash Collateral), or for any other reason during this case, the Lender will receive adequate protection, which shall be junior, subject, and subordinate to the Carve-Out (as defined below), the DIP Obligations, the DIP Liens, and the DIP Superpriority Claim, pursuant to sections 361, 363, and 364 of the Bankruptcy Code, as follows (collectively, "Adequate Protection"; the obligations imposed on the Debtor thereby, the "Adequate Protection Obligations"):

(a)     **Adequate Protection Liens**.  The Lender shall be granted valid and perfected senior, first priority liens on all of the Debtor's assets and property (whether existing prior to or following the Petition Date) which shall be subordinate to the DIP Liens and subject to the Carve Out and Permitted Liens (the "Pre-Petition Replacement Liens").

(b)     **Prepetition Superpriority Claim**.  Pursuant to section 507(b) of the Bankruptcy Code, the Lender shall be granted in the Chapter 11 Case, a superpriority administrative expense claim with respect to all Adequate Protection Obligations (the "Superpriority Claims"), which shall be junior, subject, and subordinate to (i) the Carve-Out and (ii) the DIP Superpriority Claim.

- 14 -

(c)     **Adequate Protection Payments**.   As additional adequate protection, Lender shall be entitled to (i) the payment of all fees (including reasonable professional fees and expenses owing under the Prepetition Credit Agreement as of the Petition Date), as and when set forth in the Budget, and (ii) the current payment of all such post-petition fees and expenses (collectively, the "Adequate Protection Payments").  All Adequate Protection Payments shall be paid regardless of whether such amounts accrued prior to or after the Petition Date, and shall be paid without further motion, fee application, or order of the Court.

29.     The Debtor believes that the proposed use of Cash Collateral and adequate protection described above and set forth in the Interim Order are reasonable and necessary and should be approved by the Court.  In that regard, the Debtor understands that the Lender has consented to the Debtor's use of Cash Collateral, subject to the provisions and protections outlined above and contained in the Interim Order.

## IV.   Basis for Approval of the DIP Facility and the Granting of Senior Liens and Superpriority Administrative Claims in Connection Therewith and the Debtor's Use of Cash Collateral

### A.   The Granting of Senior Liens and Superpriority Administrative Claim Status to the DIP Lender in Connection with the DIP Facility is Warranted

30.     Section 364 of the Bankruptcy Code authorizes this Court to allow the Debtor to obtain post-petition financing from the Lender in the manner proposed in the DIP Credit Agreement.  As described above, as security for all borrowings under the DIP Facility, the Debtor proposes to grant the Lender a superpriority administrative claim, and a first priority lien on and security interest in all of the assets of the Debtor, subject to certain permitted liens and claims specified in the Interim Order.

31.     The granting of superpriority administrative claim status is governed by Section 364(c) of the Bankruptcy Code.  Specifically, Section 364(c) provides:

- 15 -

if the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—

(1)   with priority over any and all administrative expenses of the kind specified in section 503(b) and 507(b) of this title;

(2)   secured by a lien on property of the estate that is not otherwise subject to a lien;

(3)   secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

32.   As noted above, substantially all of the Debtor's assets are encumbered by prepetition liens granted to the Lender.  Furthermore, the Debtor is otherwise unable to obtain unsecured financing.  Accordingly, section 364(c) of the Bankruptcy Code is satisfied, and the Court is authorized to grant the DIP Lender superpriority administrative claim status as provided in the Interim Order.

33.   Because the DIP Facility also contemplates the granting of priming liens to the DIP Lender (subject to the Carve-Out and other Permitted Liens, as defined in the Prepetition Credit Agreement), the DIP Facility also is subject to approval under the requirements of Section 364(d) Bankruptcy Code.  Section 364(d)(1) provides:

The court after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—

(A)   the trustee is unable to obtain such credit otherwise; and

(B)   there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. §364(d)(1).

34.   The Debtor submits that this Court should grant the Lender senior liens and security interests as provided in the Interim Order.   First, as discussed above,

- 16 -

Section 364(d)(1)(A) of the Bankruptcy Code is satisfied because the Debtor is unable to obtain credit sufficient to sustain their day-to-day business operations or to maintain the going concern value of its assets other than by the granting to the Lender a first priority lien and security interest in the Debtor's assets as provided in the Interim Order.  Moreover, the Debtor negotiated the DIP Credit Agreement at arm's length and has determined, in the exercise of its business judgment and in consultation with its professional advisors, that such financing is the best and only viable financing available under the circumstances.  Bankruptcy courts grant a debtor considerable deference in acting in accordance with its business judgment.  *See, e.g., Bray v. Shenandoah Fed Say. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Ames Dep't Stores, Inc.* 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest").

35.    Second, section 364(d)(1)(B) of the Bankruptcy Code is satisfied because the Debtor proposes to provide adequate protection to the Lender in the manner set forth above.  The Lender supports and consents to the proposed priming DIP Facility in its entirety, subject to the terms and conditions set forth in the Interim Order and the DIP Credit Agreement.

36.    Thus, for all of the reasons set forth above, the Debtor submits that the circumstances of this Chapter 11 Case requires the Debtor to obtain financing pursuant to sections 364(c) and 364(d) of the Bankruptcy Code.  The Debtor further submits that the terms of the DIP Credit Agreement and the Interim Order are fair, reasonable and necessary under the circumstances, and should be approved in their entirety.

- 17 -

B.     **The Use of Cash Collateral and Proposed Adequate Protection Should be Approved**

37.     Pursuant to Section 363(c)(2) of the Bankruptcy Code, a debtor in possession may not use cash collateral unless "(a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and a hearing, authorizes such use … in accordance with the provisions of this section." 11 U.S.C. §363(c)(2). In addition, Section 363(e) of the Bankruptcy Code provides that "on request of an entity that has an interest in property used … or proposed to be used … by a [debtor in possession], the court, with or without a hearing, shall prohibit or condition such use … as is necessary to provide adequate protection of such interests. 11 U.S.C. §363(e).

38.     Here, the Debtor requires use of Cash Collateral in addition to the financing provided under the DIP Facility.

39.     To adequately protect the Lender's interests on account of the Debtor's use of Cash Collateral, the Debtor proposes to provide the Lender with the protections described above and in the Interim Order. Additionally, as discussed above, the Lender consents to the use of Cash Collateral on the terms set forth herein and in the Interim Order. Accordingly, the Debtor's request to use Cash Collateral as provided herein and in the Interim Order should be approved.

C.     **Modification of the Automatic Stay**

40.     The Interim Order provides that the automatic stay shall be modified solely to the extent necessary to: (a) permit the Debtor to grant the Pre-Petition Liens and the DIP Liens and to incur all liabilities and obligations to Lender under the Interim Order; (b) authorize the Lender to retain and apply payments as provided by the Interim Order; and (c) authorize the Lender to take any and all actions authorized hereby upon the occurrence and continuation of an Event of

Default, subject to the required notice and protections afforded under the terms of the Interim Order.

## V.    **Lender's Credit Bid Rights**

In accordance with the Bankruptcy Code and as set forth in the DIP Financing Orders, the Lender shall have the unqualified right to credit bid up to the full amount of the Lender's claim in any sale of the Collateral, under or pursuant to (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or liquidation under section 1129 of the Bankruptcy Code, (iii) a sale or disposition by a Chapter 7 trustee for the Debtor under section 725 of the Bankruptcy Code. The Debtor, on behalf of itself and its estate, stipulates and agrees that any sale of all or part of the Collateral that does not include an unqualified right to credit bid up to the full amount of the Lender's claim would mean that the Lender will not receive the indubitable equivalent of its claim.

## VI.    **Request For Immediate Interim Approval of Relief Requested  Herein**

41.    Pursuant to Bankruptcy Rule 4001(c)(2), a minimum of fourteen (14) days' notice is required before the Final Hearing on this Motion may commence. Upon request, however, the Court may conduct a preliminary expedited hearing on the Motion to the extent necessary to avoid immediate and irreparable harm to the estate pending the Final Hearing. Fed. R. Bankr, P. 4001(c)(2); LBR 4001-2. In accordance with Bankruptcy Rule 4001(c), the Debtor respectfully requests that the Court conduct an expedited preliminary hearing on the Motion and authorize the Debtor to borrow under the DIP Credit Agreement and use Cash Collateral on an interim basis, pending entry of a Final Order. The Debtor submits that such relief is vital in order to maintain and finance the Debtor's ongoing operations, to preserve the going concern value of the Debtor's assets pending the conclusion of its sale process, and, therefore, to prevent immediate and

4827-6385-8215.5

irreparable harm to the Debtor's estates.  The Debtor further requests that the Court schedule a hearing to consider entry of a Final Order as soon as possible but not later than twenty-five (25) days from the hereof.

42.    As discussed above, it is essential to the continued operation of its businesses that the Debtor be authorized to obtain emergency financing under the DIP Credit Agreement on an interim basis pending the Final Hearing.  Funds are urgently needed so that the Debtor may continue to operate as a going concern, to preserve and protect the value of its assets and operations for the benefit of their stakeholders and, in furtherance thereof, to consummate a Sale and exit chapter 11.  In the absence of emergency access to interim financing, the Debtor's sale efforts and Chapter 11 Case would be immediately and irreparably jeopardized, resulting in significant harm to the Debtor's creditors and estate.

43.    To successfully implement the relief requested in this Motion, the Debtor requests a waiver of the notice requirements set forth in Bankruptcy Rule 6004(a) and the fourteen-day stay set forth Bankruptcy Rule 6004(h).

**VII.    Notice with Respect to Emergency Interim Financing Request and Final Hearing**

44.    Notice of this Motion has been given to the following parties:  (i) the Office of the United States Trustee for the District of New Hampshire; (ii) counsel for S&S; (iii) the Internal Revenue Service; and (iv) the Debtor's twenty (20) largest unsecured creditors (collectively, the "Notice Parties").  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

45.    The Debtor requests that the Court schedule the Final Hearing and authorize the Debtor to mail copies of the entered Interim Order, which fixes the date, time and manner for the filing of objections, to the Notice Parties.

- 20 -

4827-6385-8215.5

**No Prior Request**

46.     No previous motion for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Debtor respectfully requests that the Court (a) enter the Interim Order authorizing, *inter alia*, the Debtor to obtain financing pursuant to the DIP Credit Agreement and use Cash Collateral on an emergency interim basis through the conclusion of the Final Hearing on the terms set forth in the Interim Order and in the DIP Credit Agreement, (b) enter a Final Order authorizing the Debtor to obtain financing under the DIP Credit Agreement and use Cash Collateral on the terms set forth in the DIP Financing Orders and in the DIP Credit Agreement, (c) grant all related relief requested in this Motion and (d) grant the Debtor such other or further relief as may be just and proper.

Respectfully submitted,

TEMPNOLOGY, LLC
By its attorneys,

NIXON PEABODY LLP

Date: September 1, 2015

/s/ *Daniel W. Sklar*
Daniel W. Sklar, Esq. BNH# 01443
Christopher Desiderio (PHV)
Lee Harrington (PHV)
Nixon Peabody LLP
900 Elm Street
Manchester, NH 03101
Phone: (603) 628-4000

*Proposed Counsel to the Debtor and Debtor in Possession*

- 21 -