UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re<br><br>TEMPNOLOGY, LLC<br><br>Debtor. | Bk. No. 15-11400 (BAH)<br><br>Chapter 11<br><br>**Hearing Date: TBD**<br>**Hearing Time: TBD**<br>**Objection Deadline: TBD** |

**DEBTOR'S APPLICATION FOR AN ORDER (1) AUTHORIZING THE DEBTOR TO RETAIN AND EMPLOY PHOENIX CAPITAL RESOURCES AS INVESTMENT BANKER *NUNC PRO TUNC* TO THE PETITION DATE, (2) APPROVING PROPOSED FEE STRUCTURE AND (3) WAIVING CERTAIN REQUIREMENTS OF LOCAL BANKRUPTCY RULE 2016-1**

Tempnology, LLC (the "Debtor"), as a debtor and debtor-in-possession, respectfully states as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2. On the September 1, 2015 (the "Petition Date"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Hampshire (the "Court"). The Debtor continues to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of an examiner has been made in these chapter 11 cases.

3. Based in Portsmouth, New Hampshire, the Debtor is a material innovation company, with the front-facing brands of Coolcore and Dr. Cool. Coolcore, the global leader in

#35084019 v2

chemical-free cooling fabrics, has partnerships to develop fabrics for consumer brands throughout the world. Dr. Cool is a consumer goods brand based on the foundation of chemical-free cooling products.

4. Additional information regarding the Debtor's business, capital structure and circumstances leadings to this chapter 11 filing is set forth in more detail in the *Declaration of Kevin McCarthy in Support of Debtor's First Day Pleadings* (the "First Day Declaration"), which is fully incorporated herein by reference.

## RELIEF REQUESTED

5. By this Application, the Debtor seeks entry of an order (1) authorizing the Debtor to retain and employ Phoenix Capital Resources ("Phoenix") as its financial advisor to provide investment banking services pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, *nunc pro tunc* to the Petition Date, pursuant to the terms and subject to the conditions of the engagement letter attached hereto as Exhibit B (the "Engagement Letter"); (2) approving the terms of Phoenix's employment, including the proposed fee structure and indemnification provisions set forth in the Engagement Letter, subject to the standards set forth in section 328 of the Bankruptcy Code; and (3) waiving certain of the information requirements of Local Rule 2016-1.

6. The Engagement Letter describes (i) the various services that the Debtor seeks Phoenix to perform on its behalf during its chapter 11 case and (ii) the terms and conditions of Phoenix's proposed engagement by the Debtor. Phoenix's provision of services to the Debtor is conditioned upon, and subject to, the Court's approval of the Engagement Letter.

7. In support of this Application, the Debtor also submits the Declaration of Vincent Colistra, Senior Managing Director at Phoenix (the "Colistra Declaration")

## THE NEED FOR PHOENIX SERVICES AND PHOENIX'S QUALIFICATIONS

8. The Debtor's restructuring plan presently contemplates a sale of all or substantially all of the Debtor's assets to a "stalking horse" bidder to be identified by the Debtor's financial advisor and subject that sale to an expedited auction process under and pursuant to Section 363 of the Bankruptcy Code.

9. The Debtor believes that it is necessary and appropriate to employ a financial advisory firm to render investment banking services as described herein including receiving advice as to a possible sale of all or a portion of the Debtor's assets and assistance in the negotiation, promulgation and evaluation of any proposed transaction involving the Debtor's assets. Given the Debtor's serious liquidity problems, the Debtor requires the services of an experienced investment banking firm such as Phoenix to guide the Debtor through its marketing and sale process on an expedited basis.

10. The Debtor has selected Phoenix to serve as its investment banker because of its wealth of experience in providing such services in restructurings and reorganizations. The Debtors understand and recognize that Phoenix enjoys an excellent reputation for services they have rendered in large and complex Chapter 11 cases on behalf of debtors and creditors in numerous other proceedings under chapter 11 of the Bankruptcy Code before numerous bankruptcy courts nationwide.

11. As set forth in the Colistra Declaration, Phoenix and its senior professionals have extensive expertise providing investment banking and financial advisory services to financially distressed companies, creditors, committees, equity holders, asset purchasers and other constituencies in reorganization proceedings and complex financial restructurings, both in and out of court.

#35084019 v2

12. The Debtor believes that Phoenix's resources, capabilities and experience make it well qualified to serve the Debtor effectively and efficiently in its chapter 11 case. As such, the Debtor believes that the retention of Phoenix is in the best interest of the Debtor, its estate, its creditors and other parties in interest.

## SERVICES TO BE PROVIDED BY PHOENIX

13. As further set forth in the Engagement Letter, the Debtor is seeking to retain Phoenix to provide investment banking services, including, but not limited to:[1]

   a. evaluating the Debtor's cash flow requirements and sources and uses of funds;

   b. identifying interested parties that may be interested in purchasing the Debtor's assets; and

   c. developing an appropriate timetable, marketing of the Debtor's assets to potential interested parties and securing a stalking horse purchaser for a section 363 sale;

   d. securing debtor-in-possession financing to allow the Debtor to conduct an expedited auction and sale process;

   e. assisting the Debtor with presentations to constituents regarding sale process;

   f. conducting due diligence and preparing confidential informational memorandum for distribution to buyer or stalking horse bidder; and

   g. assisting the Debtor with its sale process including valuation, negotiation and closing of the transaction as well as advising the Debtor on strategic alternatives.

14. The Debtor does not believe that the services to be rendered by Phoenix will be duplicative of the services performed by any other professional and Phoenix will work together with any other professionals retained by the Debtor to minimize and avoid duplication of services. The Debtor firmly believes that Phoenix will provide these necessary services in a cost-effective, efficient and timely manner.

---

[1] To the extent there is any inconsistency between the above summary and the terms of the Engagement Letter, the terms of the Engagement Letter shall control. In addition, capitalized terms not otherwise defined herein shall have the meanings set forth in the Engagement Letter.

4

#35084019 v2

## PROFESSIONAL COMPENSATION

15. As set forth more fully in the Engagement Letter, and subject to the terms thereof and the Court's approval, the Debtor and Phoenix have agreed to the following compensation and expense reimbursement (the "Fee and Expense Structure"):[2]

- The Debtor paid Phoenix an initial non-refundable fixed fee of $50,000 upon the signing of the Engagement Letter which related to services provided prior to bankruptcy;

- The Debtor has paid a second non-refundable fixed fee of $50,000 immediately prior to the Petition Date which will serve as partial compensation for post-petition services;

- Upon the closing of a Transaction, as that term is defined in the Engagement Letter, the Debtor will also pay Phoenix a transaction fee of $125,000 (the "Minimum Fee");

- In addition, if the sale process involves a court approved stalking horse bidder, Phoenix will be entitled to the $125,000 Minimum Fee plus 5% of any amount in excess of the stalking horse bid (the "Transaction Fee"); and

- Regardless of whether a Transaction is consummated, the Debtor will reimburse Phoenix for its reasonable out-of-pocket expenses including legal counsel but in no event greater than $10,000 without the Debtor's prior written approval which shall not be unreasonably withheld.

16. During the pendency of this chapter 11 case, Phoenix shall apply to the Court for the allowance of compensation for professional services rendered and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable procedures and orders of the Court and consistent with the proposed compensation arrangement set forth in the Engagement Letter.

17. The Debtor believes that the Fee and Expense Structure set forth in the Engagement Letter includes reasonable terms and conditions of employment and should be

---

[2] To the extent there is any inconsistency between the summary of the Fee and Expense Structure set forth in this Application and the Fee and Expense Structure as set forth in the Engagement Letter, the terms of the Engagement Letter shall control.

5

#35084019 v2

approved under section 328(a) of the Bankruptcy Code. The Fee and Expense Structure appropriately reflects the nature of the services to be provided by Phoenix and the fee structures typically utilized by leading financial advisory and investment banking firms of similar stature to Phoenix for comparable engagements, both in and out of court. The Fee and Expense Structure is consistent with Phoenix's normal and customary billing practices for cases of this size and complexity that require the level of scope and services outlined herein. In particular, the Debtor believes that the Fee and Expense Structure creates a proper balance between fixed monthly fees and contingency fees.

18. The Debtor further believes that the Fee and Expense Structure includes reasonable terms and conditions of employment in light of (a) industry practice, (b) market rates charged for comparable services both in and out of the chapter 11 context, (c) Phoenix's substantial experience with respect to investment banking services and (d) the nature and scope of work to be performed by Phoenix in these cases.

19. Consistent with its ordinary practice and the practice of financial advisors and investment bankers in other chapter 11 cases whose fee arrangements are not hours-based, Phoenix does not maintain contemporaneous time records or provide or conform to a schedule of hourly rates for its professionals. Given the foregoing and that Phoenix's compensation is based on fixed fees, the Debtor requests that pursuant to Local Rule 2016-1(a)(1), Phoenix's professionals be excused from the information requirements set forth in Local Rule 2016-1.

#35084019 v2

## THE INDEMNIFICATION OBLIGATIONS TO PHOENIX[3]

20. As part of the overall compensation payable to Phoenix under the terms of the Engagement Letter, the Engagement Letter provides that the Debtors will indemnify Phoenix for certain losses, claims, or damages arising from the proposed engagement, except for such losses, claims or damages that arise out of the gross negligence or willful misconduct on the part of Phoenix. Such terms of indemnification, as modified by the proposed order authorizing Phoenix's retention, reflect the qualifications and limits on such terms that are customary and reasonable for restructuring engagements both out-of-court and in the context of a Chapter 11 bankruptcy.

## PHOENIX'S DISCLOSURES CONCERNING ITS CONNECTIONS WITH THE DEBTOR AND OTHER PARTIES IN INTEREST

21. Phoenix has informed the Debtor that as of the date hereof, except as set forth in the Colistra Declaration, (a) it has no connections with the Debtor, its creditors or other parties in interest in this chapter 11 case; (b) it does not represent any entity having an interest adverse to the interests of the Debtor's estate or of any class of creditors or equity security holders; and (c) neither Phoenix nor any employee of Phoenix (i) is a creditor, equity security holder or an insider of the Debtor or (ii) is or was, within two years before the Petition Date, a director, officer, or employee of any of the Debtor. In addition, none of the Phoenix professionals expected to assist the Debtor is related or connected to any United States Bankruptcy Judge for the District of New Hampshire the U.S. Trustee, or any person employed in the office of the U.S. Trustee Region 1.

---

[3] To the extent there is any inconsistency between the summary of the indemnification provisions set forth in this Application and the indemnifications set forth in Consent, Release and Indemnification following the Engagement Letter, the terms of the Engagement Letter shall control.

#35084019 v2

22. To the best of the Debtor's knowledge, Phoenix is a "disinterested person," as referenced in Bankruptcy Code § 327(a) and as defined in Bankruptcy Code § 101(14).

23. The Debtor has been advised that Phoenix has agreed not to share with any other person or firm the compensation to be paid for professional services rendered in connection with this chapter 11 case in accordance with section 504(a) of the Bankruptcy Code.

## BASIS FOR RELIEF

24. The Debtor seeks entry of an order authorizing the Debtor to retain and employ Phoenix pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014. Section 327(a) of the Bankruptcy provides, in relevant part, that "the [debtor-in-possession], with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor-in-possession] in carrying out the [debtor-in-possession]'s duties under this title." 11 U.S.C. § 327(a).

25. Section 328(a) of the Bankruptcy Code, moreover, provides, in relevant part, that the debtor-in-possession "with the court's approval, may employ or authorize the employment of a professional person under section . . . 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ." 11 U.S.C. § 328(a). In general, when a fee arrangement, such as that proposed herein, is approved under Section 328, it cannot be revisited later for reasonableness or otherwise, unless the terms and conditions of such arrangement "prove to have been improvident in light of developments not capable of being anticipated at the time of" approval thereof. *Id.*

#35084019 v2

26. Bankruptcy Rule 2014 requires that a retention application include "[s]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee."

27. Given the numerous issues that Phoenix may be required to address in performing its services for the Debtor pursuant to the Engagement Letter, Phoenix's commitment to the variable time requirements and effort necessary to address all such issues as they arise, and the market prices for Phoenix's services for engagements of this nature, the Debtor submits that the terms and conditions of the Engagement Letter are fair, reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.  The Debtor also believes that the Fee and Expense Structure appropriately reflects (a) the nature and scope of Phoenix's services, (b) Phoenix's substantial experience with respect to financial advisory and investment banking services and (c) the fee structures typically utilized by Phoenix and other financial advisory and investment banking firms, which do not bill their clients on an hourly basis, in bankruptcy or otherwise.

28. As set forth above, and notwithstanding approval of the Engagement Letter under sections 327(a) and 328(a) of the Bankruptcy Code, Phoenix intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any

9

other applicable procedures and orders of this Court, with certain limited modifications as set forth herein.

29. In light of the foregoing, the Debtor submits that the retention of Phoenix is in the best interests of the Debtor, its creditors and all parties in interest in this this chapter 11 case. As noted above, Phoenix has extensive experience in matters involving complex financial restructurings and an excellent reputation for the services that it has rendered in chapter 11 cases on behalf of debtors and creditor constituencies throughout the United States. The Debtor therefore submits that it has satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules to support entry of an order authorizing the Debtor to retain and employ Phoenix in this chapter 11 case on the terms described herein and in the Engagement Letter.

## NO PRIOR REQUEST

30. No prior application for the relief requested herein has been made to this or any other court.

## NOTICE

31. The Debtor will provide notice of this Motion to: (i) the Office of the United States Trustee for the District of New Hampshire; (ii) the holders of the 30 largest unsecured claims on a consolidated basis; (iii) counsel to the Debtor's prepetition lender; and (iv) all parties who have requested notice pursuant to Bankruptcy Rule 2002.

## WAIVER OF MEMORANDUM OF LAW

32. The Debtor requests that the Court waive and dispense with the requirement set forth in LBR 7102(b)(2) that any motion filed shall have an accompanying memorandum of law. The legal authorities upon which the Debtor relies are set forth in the Motion. Accordingly, the

#35084019 v2

Debtor submits that a waiver of the LBR 7102(b)(2) requirement is appropriate under these circumstances.

WHEREFORE, the Debtor respectfully requests that the Court enter the order, substantially in the form attached hereto as Exhibit A , granting the relief requested herein and such other relief as the Court may deem just and proper.

Dated: September 2, 2015

_____
Kevin McCarthy

#35084019 v2