UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re<br><br>TEMPNOLOGY, LLC<br><br>Debtor. | Bk. No. 15-11400 (BAH)<br><br>Chapter 11 |

**DECLARATION OF VINCENT COLISTRA IN SUPPORT OF DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I)(A) APPROVING PROCEDURES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS, (B) APPROVING STALKING HORSE PROTECTIONS, (C) SCHEDULING RELATED AUCTION AND HEARING TO CONSIDER APPROVAL OF SALE, (D) APPROVING PROCEDURES RELATED TO ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (E) APPROVING FORM AND MANNER OF NOTICE THEREOF, AND (II)(A) AUTHORIZING SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS PURSUANT TO SUCCESSFUL BIDDER'S ASSET PURCHASE AGREEMENT, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, AND (B) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND <u>UNEXPIRED LEASES RELATED THERETO</u>**

I, VINCENT COLISTRA, hereby state and declare as follows:

1. I am a Senior Managing Director at Phoenix Capital Resources ("<u>Phoenix</u>"), an investment banking and financial advisory firm with principal offices located at 110 Commons Court, Chadds Ford, Pennsylvania and 535 Fifth Avenue, New York, NY. This Declaration is submitted in support of the Tempnology LLC's (the "<u>Debtor</u>") Motion for Entry of an Order (I) Approving Procedures in Connection with Sale of Substantially All of Debtor's Assets, (B) Approving Stalking Horse Protections, (C) Scheduling Related Auction and Hearing to Consider Approval of Sale, (D) Approving Procedures Related to Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (E) Approving Form and Manner of Notice Thereof, and (II)(A) Authorizing Sale of Substantially All of Debtor's Assets Pursuant to Successfully Bidder's Asset Purchase Agreement, Free and Clear of Liens, Claims,

Encumbrances and Other Interests, and (B) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto (the "Motion")[1].

2.  Except as otherwise stated in this Declaration, I have personal knowledge of or have relied upon the knowledge of others employed by Phoenix with respect to the matters set forth herein. If called to testify, I could and would testify competently to the facts set forth herein.

**A.  Phoenix's Qualifications and Engagement**

3.  Phoenix has agreed to provide investment banking services to the Debtor in the above-captioned chapter 11 case pursuant to the terms and conditions set forth in that certain engagement letter between the Debtor and Phoenix dated July 20, 2015. As part of Phoenix's duties, it was hired in order to pursue the sale or merger of all or a portion of the Debtor and its assets.

4.  Phoenix, together with its affiliate Phoenix Management Services, provides a broad range of advisory services to its clients, including investment banking, turnaround and other financial restructuring advisory services. The investment banking and financial advisory professionals employed by Phoenix have been advising clients around the world for more than twenty years.

5.  Phoenix has extensive expertise providing investment banking and financial advisory services to financially distressed companies, creditors, committees, equity holders, asset purchasers and other constituencies in reorganization proceedings and complex financial restructurings, both in and out of court. In particular, Phoenix has successfully managed numerous engagements for companies wherein the ultimate solution to maximize value for the

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings given to them in the Motion.

2

various constituents required filing for protection of Chapter 11 of the United States Bankruptcy Code to ultimately effectuate operational turnarounds, balance sheet restructurings, sales of the businesses through a 363 auction process and plans of reorganization.

**B.     Phoenix's Pre-Petition Marketing Efforts**

6.     Upon its engagement, Phoenix provided the Debtor with an information request for information including, but not limited to, the Debtor's financial history and projections, legal structure, organizational structure, products, market landscape, strategy, suppliers, customers, ownership, and intellectual property.

7.     Thereafter, Phoenix met with the Debtor's Chief Financial Officer and Chief Executive Officers during July 20, 2015 through July 23, 2015 in order to evaluate the Debtor's business structure, viability, and other information in order to formulate a cohesive marketing and sales plan for the Debtor's business.

8.     Based on this information, Phoenix developed a two page "executive summary" and a confidential information memorandum to be distributed to potential interested parties. In addition, Phoenix established a data room in order to allow interested parties the opportunity to conduct due diligence.

9.     Phoenix and counsel to the Debtor have prepared a Non-Disclosure Agreement (the "NDA") for third parties who wish to access the data room.

10.     In consultation with the Debtor's management, Phoenix assembled a preliminary list of fourteen logical parties to be contacted pre-petition based on their applicable investment portfolios, connections to the textile and garment industries, and relationships to the Debtor and Phoenix.

3

11. Prior to the Petition Date, Phoenix distributed the teaser to senior decision makers at the targeted potential strategic and financial buyers. Phoenix received three responses indicating the parties were not interested and the balance of the contacted parties chose not to respond.

12. Phoenix received on signed NDA from an interested party, but after internal discussion and cursory evaluation of the Debtor's business, the third party decided not to pursue the transaction any further.

13. Thereafter, the Debtor and its advisor met with the Stalking Horse on August 12, 2015, to negotiate the terms regarding a stalking horse bid and debtor-in-possession lending facility

**C.  Proposed Post-Petition Marketing Efforts**

14. Promptly upon the approval of the Bid Procedures, Phoenix will update the confidential information memorandum to provide parties with the most up to date financial information and projections.

15. The executive summary will be updated to provide a summary of the bid procedures, auction process and timing, and the requirements relating to Qualified Bids.

16. Phoenix will conduct a broad search in an attempt identify at least one hundred logical strategic and financial buyers for the Debtor. Strategic buyers will be uncovered through Standard Industry Classification (SIC) code searches to identify companies with ties to the retail and/or manufacturing textile industries. Financial buyers will include private equity groups and holding companies whose portfolios contain companies operating in the textile industry. Nixon Peabody and Debtor will also provide Phoenix with contact information for potential buyers in their respective networks.

17. The executive summary will be circulated to senior decision makers at over one hundred logical financial and strategic buyers.

18. To the extent any third party requests additional information, Phoenix will provide the party and/or its advisors with the Confidential Information Memorandum as well as access to a secure data room that Phoenix established and is managing. As is often the practice during a due diligence process, the interested party will frequently request additional information beyond what is provided in the data room. Phoenix will act as the intermediary between the interest party and the Debtor to ensure relevant information is shared in a timely manner.

19. To the extent any third party shows interest in pursuing a transaction with the Debtor, Phoenix will assist the Debtor in preparing for and making presentations at meetings with representatives of its secured and unsecured creditors and other interested parties as necessary so that the sale process can be openly discussed and understood by the Debtor's key constituents.

20. Phoenix, in participation with Nixon Peabody, will conduct an auction on behalf of the Debtor to secure the highest bid for all or a portion of the Debtor.

21. Finally, upon the selection of the Successful Bidder, Phoenix will be available to testify on the Debtor's behalf surrounding the methodologies and process employed by Phoenix in selecting a transaction.

22. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: September 2, 2015

/s/ *Vincent Colistra*
Vincent Colistra
Senior Managing Director