**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| In re:<br><br>Tempnology LLC,<br><br>　　　　　Debtor | Chapter 11<br>Case No. 15-11400-BAH<br><br>Hearing: *Motion for Expedited Hearing Pending* |

**MOTION OF THE UNITED STATES TRUSTEE FOR AN ORDER CONVERTING THE DEBTOR'S CASE TO CHAPTER 7 OR IN THE ALTERNATIVE AUTHORIZING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE OR EXAMINER**

Pursuant to 11 U.S.C. §§ 1104(a), 1104(c), and 1112(b)(4), the United States Trustee, William K. Harrington, respectfully requests that the Court issue an order converting the case to a case under chapter 7, or in the alternative, authorizing the appointment of a chapter 11 trustee or examiner.  In support thereof, the United States Trustee respectfully submits:

### I.　　PRELIMINARY STATEMENT

The United States Trustee seeks an order authorizing the appointment of a disinterested fiduciary to liquidate the Debtor's assets and/or to investigate pre-petition and proposed post-petition transactions with insiders of the Debtor.   Cause exists for the appointment of an independent fiduciary to, at a minimum, scrutinize and evaluate the proposed insider financing and sale transactions now pending before the Court.

### II.　　JURISDICTION

1.　　This is a contested matter in which the United States Trustee seeks an order authorizing the appointment of a chapter 11 trustee or examiner pursuant to 11 U.S.C. § 1104 or in the alternative an order converting this case to chapter 7 pursuant to 11 U.S.C. § 1112(b).  It is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(J).  The

statutory predicates for relief are 28 U.S.C. §§ 586(a)(3), 586(a)(8) and 1930(a)(6), 11 U.S.C. §§ 1104, 1112(b) and Fed. R. Bankr. P. 1017.

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire.

### III. PROCEDURAL AND FACTUAL BACKGROUND

#### A. The Debtor's Corporate History

3. Upon information and belief, and based on a review of public records maintained by the New Hampshire Secretary of State, Tempnology LLC ("**Debtor**") is a limited liability company that was formed on April 13, 2011, under the name "Cool Core, LLC." On April 18, 2012, the Debtor's Certificate of Formation was amended to change the name of the limited liability company to "Tempnology LLC."

4. The Debtor was formed for the primary business purpose of "creating, manufacturing and selling textile products and specialized cloth." The Debtor describes itself as a material innovation company specializing in chemical-free cooling fabrics. *See* Declaration of Kevin McCarthy in Support of Debtor's First Day Pleadings (Court Docket No. 16)("**McCarthy Declaration**") at ¶¶ 7-8.

5. According to the Certificate of Formation and Annual Reports for 2012-2015, the manager of the Debtor is Mark R. Stebbins ("**Mr. Stebbins**").

#### B. The Debtor's Membership

6. Upon information and belief, the members and percentage ownership interests in the Debtor are as follows:

| Member | % |
|---|---|
| Frigid Fabrics LLC ("**Frigid Fabrics**") | 36.93% |
| Schleicher & Stebbins Hotels L.L.C. ("**S&S Hotels**") | 30.01% |
| Blue Wave LLC | 2.46% |
| CCT Corp | 12.28% |
| Mighty Moose LLC | 18.32% |
| Total | 100% |

*See* McCarthy Declaration at ¶ 27.

7. Upon information and belief and based upon public records maintained by the New Hampshire Secretary of State, S&S Hotels is a New Hampshire limited liability company that was formed by Mr. Stebbins in 1997. Mr. Stebbins is listed as the manager of S&S Hotels on its Certificate of Formation and all Annual Reports viewable online at the Secretary of State's website (years 2003-2015).

8. S&S Hotels owns 68.3% of Frigid Fabrics. *See* McCarthy Declaration at ¶ 28. S&S Hotels thus directly and indirectly owns approximately 55% of the Debtor. *See id.* at ¶¶ 27-28.

9. Upon information and belief and based upon public records maintained by the New Hampshire Secretary of State, S&S Hotels is or was also the manager of Frigid Fabrics. The Certificate of Formation for Frigid Fabrics states that is manager is "Mark Stebbins manager of Schleicher & Stebbins Hotels L.L.C." Frigid Fabric's Annual Reports for 2012 and 2013 list S&S Hotels as its manager, while the Annual Reports for 2014 and 2015 list Mr. Stebbins as manager.

C. **The Debtor's Bankruptcy Filings.**

10. On September 1, 2015 ("**Petition Date**"), the Debtor filed a voluntary chapter 11 petition ("**Petition**") with the Court.

3

11. No trustee has yet been appointed in this case. The Debtor remains a Debtor-in-possession.

12. On its bankruptcy schedules ("**Schedules**"), the Debtor lists $6,224,369.92 in total liabilities, consisting of: $5,550,000 in secured debt owed to a single creditor, S&S Hotels (*see* Schedule D); $109,264 in priority wage claims (*see* Schedule E); and general unsecured debts of $565,105.92 (*see* Schedule F).

13. The Debtor does not own any real property. *See* Schedule A. It values its personal property at $2,739,857.00. *See* Schedule B.

14. The Debtor filed numerous first day pleadings on the Petition Date, including a motion to approve post-petition financing. *See* Court Docket No. 14 ("**Financing Motion**").

15. On September 2, 2105, the day after the Petition Date, the Debtor filed a motion for the entry of an order approving procedures in connection with the sale of substantially all of the Debtor's assets. *See* Court Docket No. 34 ("**Sale Procedures Motion**").

16. Through the Financing Motion, the Debtor seeks authorization to obtain a senior secured priming revolving loan of up to $6,850,000 from S&S Hotels and to also grant S&S Hotels superpriority administrative claim status. The Debtor proposes to utilize the financing proceeds to repay the pre-petition loan from S&S Hotels while stipulating to the amount, validity and priority of its prepetition claims and liens.

17. Through the Sale Procedures Motion, the Debtor asks the Court to authorize S&S Hotels, who is the proposed "Stalking Horse Bidder," to credit bid up to $6,850,000 for the Debtor's assets. The proposed purchase price under the current Stalking Horse Agreement is $6,950,000, consisting of the credit bid plus $100,000 of assumed liabilities. If the current

Stalking Horse Bid succeeds, the sale will not produce any cash proceeds for the bankruptcy estate.

18. According to the Debtor's Schedules, S&S Hotels is the Debtor's largest creditor, holding a secured claim of $5,550,000 for "Advances made…between 8/28/14 and 8/24/15." Schedule D. The Debtor's secured debt obligations increased from just $350,000 in 2013 to over $5.5 million in only two years; *see* McCarthy Declaration at ¶¶ 16, 24, 37; but it is unclear how the loan proceeds were utilized.

19. The Debtor cites as one of the events leading to the filing of its chapter 11 Petition its dispute with Mission Product Holdings, Inc. ("**Mission**") under the parties' Co-Marketing and Distribution Agreement. *See* McCarthy Declaration at ¶¶ 29 – 36. The parties participated in a commercial arbitration prior to filing. *See id.* at ¶¶ 33-34.

20. Mission has objected to both the Financing Motion and the Sale Procedures Motion. *See* Court Docket No. 99 ("**Mission Objection**"). In its Objection, Mission argues, *inter alia*, that "there are enough facts here to suggest that S&S [Hotel]'s claim should be equitably subordinated or recharacterized as equity as S&S controlled the Debtor to the detriment of its creditors." Mission Objection at ¶ 4. Mission alleges that Mr. Stebbins, who is also the manager of S&S Hotels, is on the Debtor's Management Committee and "repeatedly made clear" that he was a key "decision-maker" for the Debtor. *Id.* at ¶ 29.

21. No plan of reorganization has yet been filed.

22. The final hearing on the Financing Motion and the hearing on the Sale Procedures Motion are both scheduled for September 18, 2015.

23. A section 341 meeting of creditors has been scheduled for September 23, 2015.

24. The United States Trustee has attempted, but is currently unable, to appoint an

5

Official Creditors' Committee as contemplated by 11 U.S.C. § 1102(a)(1).

## IV. ARGUMENT

**A. The Court Should Enter an Order Converting This Case to Chapter 7 or in the Alternative Directing the United States Trustee to Appoint a Chapter 11 Trustee or Examiner, Based on the Need for a Disinterested Fiduciary to Investigate Pre-Petition Insider Transactions and/or to Liquidate the Debtor's Assets.**

25.     As set forth herein, ample cause exists for the appointment of an independent fiduciary under chapter 11 or chapter 7 to undertake the administration, investigation and/or liquidation of the Debtor's estate.

### i. Applicable Legal Standards

#### a. Appointment of a Chapter 11 Trustee

26.     Section 1104(a)(1) requires the Court to appoint a chapter 11 trustee upon a showing of "cause," including "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause."  11 U.S.C. § 1104(a)(1).

27.     Section 1104(a)(2) mandates the appointment of a chapter 11 trustee if doing so "is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor."  11 U.S.C. § 1104(a)(2).

28.     While 11 U.S.C. § 1104(a)(1) addresses management's pre and post-petition misdeeds or mismanagement, subsection (2) provides the Court with "particularly wide discretion" to appoint a trustee, even absent wrong doing or mismanagement.  *In re Bellevue Place Assocs.,* 171 B.R. 615, 623 (Bankr. N.D. Ill. 1994).   Where the Court finds either that cause exists or that appointment is in the interest of the parties, an order for the appointment of a trustee

6

is mandatory.  *Official Comm. of Asbestos Pers. Injury Claimants v. Sealed Air Corp. (In re W.R. Grace & Co.)*, 285 B.R. 148, 158 (Bankr. D. Del. 2002).

29. The Court's determination of whether there is cause to appoint a chapter 11 trustee is fact-intensive and, as such, should be made under the preponderance of the evidence standard after considering the totality of the circumstances on a case-by case-basis.  *In re Costa Bonita Beach Resort, Inc.*, 479 B.R. 14, 44 (Bankr. D. P.R. 2012); *Tradex Corp. v. Morse (In re Tradex Corp.)*, 330 B.R. 823, 829-830 (D. Mass. 2006).

30. In making that determination, courts should be cognizant of the fact that "section 1104 represents a protection that the Court should not lightly disregard or encumber with overly protective attitudes towards debtors-in-possession."  *In re V. Savino Oil & Heating Co., Inc.,* 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989).

    b.  <u>Appointment of an Examiner</u>

31. Section 1104(c) provides that,

> (c) If the court does not order the appointment of a trustee under this section, then then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if--
>
> (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or
>
> (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C. § 1104(c).

32. "The benefit of appointing an independent examiner is that he or she will act as an objective nonadversarial party who will review the pertinent transactions and documents, thereby allowing the parties to make an informed determination as to their substantive rights." *In re FiberMark, Inc.*, 339 B.R. 321, 325 (Bankr. D. Vt. 2006).

    c. <u>Conversion to Chapter 7</u>

33. Pursuant to 11 U.S.C. § 1112(b), "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or examiner is in the best interests of creditors and the estate."  11 U.S.C. § 1112(b).

34. Section 1112(b)(4) provides a non-exhaustive list of factors constituting cause for conversion.  *In re Gonic Realty Trust,* 909 F.2d 624, 626-27 (1st Cir. 1990).   The list is nonexclusive; "the court may consider other factors as they arise and use its powers to reach appropriate results in individual cases."  *Id*.   "In construing what other factors are relevant, the bankruptcy court must use its 'sound judgment' and make its determination with the best interests of creditors as its highest goal."  *In re PM Cross, LLC*, 494 B.R. 607, 617 (Bankr. D.N.H. 2013) (citing *In re Gonic Realty Trust,* 909 F.2d at 626-627).

35. Once a movant establishes that cause for dismissal or conversion exists, the burden shifts to the opposing party to specifically identify unusual circumstances that show dismissal or conversion would not be in the best interest of the estate and its creditors, and that there is a reasonable likelihood that a plan will be confirmed within a reasonable period of time.  *See* 11 U.S.C. § 1112(b)(2).

  **ii. The Court Should Convert the Debtor's Case to Chapter 7 Under 11 U.S.C. § 1112 or in the Alternative Appoint an Independent Chapter 11 Trustee or Examiner Under 11 U.S.C. § 1104 Due to Management's Material and Incurable Conflicts of Interest.**

36. Under 11 U.S.C. § 1107(a), a chapter 11 debtor-in-possession assumes the rights, powers and obligations of a trustee.  *In re Schatz*, 402 B.R. 482, 485 (Bankr. D.N.H. 2009).  Thus, a debtor-in-possession is a "statutory fiduciary of its own estate."  *In re Rancourt*, 207 B.R. 338, 360 (Bankr. D.N.H. 1997).  A chapter 11 debtor has a duty, among others, to examine and object to claims, exercise avoidance powers if it would likely benefit creditors, and maximize the value of the estate.  *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3rd Cir. 2003).

37. In the present case, the Debtor's principals may "wear 'so many hats' that it may be impossible for them to fulfill the fiduciary duties of a debtor in possession."  *In re SunCruz Casinos, LLC*, 298 B.R. 821, 831 -832 (Bankr. S.D. Fla. 2003).  The appointment of an independent fiduciary is necessary where, as here, a debtor's management suffers from material conflicts of interest which give rise to the presumption that it will be unable to conduct unbiased investigations and make impartial decisions in pursuing claims on behalf of the debtor.  *In re Ridgemour Meyer Props., LLC*, 413 B.R. 101, 113 (Bankr. S.D.N.Y. 2008).

38. The Debtor and S&S Hotels (the Debtor's pre-petition secured lender, DIP lender, and proposed Stalking Horse Bidder) not only share common management, but S&S Hotels directly and indirectly has a 55% ownership interest in the Debtor.  The filing of the Debtor's Petition was immediately followed by a motion seeking authority to: obtain a senior secured priming loan of up to $6,850,000 from S&S Hotels; grant S&S Hotels superpriority administrative claim status; utilize the financing proceeds to repay the pre-petition loan from S&S Hotels; and

9

stipulate to the amount, validity and priority of S&S Hotels' prepetition claims and liens.   The Debtor then moved for the approval of sale procedures which could result in the sale of substantially all of its assets to S&S Hotels in exchange for a credit bid and assumption of certain liabilities, with no cash proceeds flowing to the estate.   At least one creditor or party in interest, Mission, has alleged that S&S Hotels' claim should be equitably subordinated or recharacterized as equity.   *See* Mission Objection at ¶ 4.

39.   There appears to be no reorganization contemplated for this Debtor.   In liquidating its estate, the Debtor has a fiduciary duty to maximize the return on its assets and pursue chapter 5 actions, including claims for equitable subordination or recharacterization, if it would benefit the estate.   In short, "[t]here are no duties to perform aside from those which the present management is least likely to want to perform."   *In re Fiesta Homes of Georgia Inc.,* 125 B.R. 321, 326 (Bankr. S.D. Ga. 1990)(holding that chapter 11 liquidation plan which required recovery of preferences from insiders who were close family members of debtor's current management, gave rise to conflicts of interest warranting appointment of trustee and conversion of case to chapter 7).

40.   These inherent conflicts of interest dictate the appointment of an impartial fiduciary, whether through conversion of the Debtor's case to chapter 7 or through the appointment of a chapter 11 trustee or examiner.   *See, e.g., In re Graf Bros., Inc.*, 19 B.R. 269, 270 (Bankr. D. Me. 1982)(conversion to chapter 7 is appropriate in chapter 11 liquidation case in light of potential conflict of interest between debtor and those with whom debtor is dealing during liquidation); *In re Bowman*, 181 B.R. 836, 845 (Bankr. D. Md. 1995)(inability to fulfill fiduciary duties due to conflict of interest is itself cause to appoint a trustee or convert case to chapter 7). *See also In re L.S. Good & Co.,* 8 B.R. 312 (Bankr . N.D. W.Va. 1980)(appointing trustee due to

potential conflicts of interest between management and estate); *In re Nautilus of New Mexico, Inc.,* 83 B.R. 784 (Bankr. N.M. 1988)(appointing trustee due to co-owner president's conflict of interest); *In re Microwave Prods. of Am., Inc.,* 102 B.R. 666, 676 (Bankr. W.D. Tenn. 1989)(chapter 11 trustee appointed where debtor was not in a "strong posture" to pursue possible claims due to conflicts of interest); and *In re Gordon Properties, LLC*, 514 B.R. 449, 458 (Bankr. E.D. Va. 2013)(appointment of examiner was appropriate, in case in which chapter 11 debtors had entered into proposed settlement with corporate creditor that had three debtor-affiliated directors, in order to investigate potential conflicts of interest).

WHEREFORE, the United States Trustee requests that the Court issue an order converting this case to chapter 7 or in the alternative, ordering that a disinterested chapter 11 trustee or examiner be appointed, and for such other and further relief as is just.

Respectfully submitted,

WILLIAM K. HARRINGTON
United States Trustee

Dated: September 14, 2015   By:   /s/ Ann Marie Dirsa
Ann Marie Dirsa BNH 06121
1000 Elm Street Suite 605
Manchester, NH 03101
(603) 666-7908

11

## **CERTIFICATE OF SERVICE**

       I hereby certify that on this September 14, 2015, I caused to be served a copy of the foregoing as follows:

**Notice will be served on counsel of record via CM/ECF**:

    Christopher M. Candon
    Roma N. Desai
    Robert J. Keach
    Michael A. Klass
    James F. Raymond
    Daniel W. Sklar
    Steven J. Venezia

                                    <u>/s/ Ann Marie Dirsa</u>
                                    Ann Marie Dirsa