# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re | ) Bk. No. 15-11400 (JMD) |
| | ) |
| OLD COLD, LLC f/k/a | ) |
| TEMPNOLOGY, LLC | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |
| | ) Adversary No. 16-_____(JMD) |
| OLD COLD, LLC f/k/a | ) |
| TEMPNOLOGY, LLC AND | ) |
| SCHLEICHER & STEBBINS HOTELS | ) |
| L.L.C., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| MISSION PRODUCT HOLDINGS, INC. | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT OF THE DEBTOR AND SCHLEICHER & STEBBINS HOTELS L.L.C. SEEKING EXTENSION OF AUTOMATIC STAY UNDER 11 U.S.C. § 362(a) AND FOR INJUNCTIVE RELIEF PURSUANT TO 11 U.S.C. § 105(a)**

Pursuant to Federal Rule of Bankruptcy Procedure 7001 and 11 U.S.C. §§ 105(a) and 362(a), Old Cold, LLC f/k/a Tempnology, LLC (the "Debtor") and Schleicher & Stebbins Hotels L.L.C. ("S&S") bring this Complaint seeking an extension of the automatic stay and/or an injunction against Mission Product Holdings, Inc. ("Mission") to enjoin Mission from continuing its efforts to circumvent the rulings of this Court and interfere and otherwise impair the reorganization efforts of the Debtor.

Not satisfied with this Court's rulings and having failed to submit the successful bid for the Debtor's assets in the Court-approved sale process, on the eve of the hearing to approve the sale of the Debtor's assets to S&S, Mission filed a lawsuit in New York state court (the "New

{S0684828.5}

York Case") alleging that S&S's conduct leading up to and during the Debtor's Chapter 11 case (the "Bankruptcy Case") constituted intentional interference with contractual relations. In addition to the many procedural defects of the New York Case,[1] Mission's complaint contains patently false and misleading allegations. For example, rather than informing the New York court that the Mission Contract (defined below) had been rejected *nunc pro tunc* to September 1, 2015 by this Court's order dated October 2, 2015 [Docket No. 188], Mission instead asserted that the Debtor "has attempted" to reject the contract in the Bankruptcy Case and that the contract remains "valid and enforceable." See Mission NY Complaint at ¶¶ 24, 27, a copy of which is attached hereto as **Exhibit A**. Mission's state court lawsuit is frivolous and is a transparent collateral attack on the proceedings before this Court and this Court's rulings. The improper, end-run nature of Mission's New York Case is underscored by this Court's December 18, 2015 Order and Memorandum approving the Debtor's motion to sell its assets to S&S [Docket Nos. 306 and 307]. This Court's findings and rulings directly address and are contrary to many of Mission's material allegations in the New York Case. For example, in the New York Case, Mission repeatedly alleges that the Debtor's Chapter 11 filing was made in bad faith and for an improper purpose. See Mission NY Complaint at ¶ 25. Mission further alleges that the Debtor and S&S colluded to effectuate a sale that will only benefit S&S without any cash outlay or benefit to any other creditors. Id. Apart from being false, these and other allegations made by Mission in the New York Case were presented and explicitly rejected by this Court.

The New York Case is an obvious end-run around this Court's rulings and should not be countenanced by this Court. Mission's tactic in the New York Case is to cause litigation cost to

---

[1] S&S has removed the New York Case to the United States District Court for the Southern District of New York. On December 22, 2015, S&S moved in the Southern District of New York to dismiss the case or, in the alternative, to have the case transferred to the Unites States District Court for the District of New Hampshire which could, in turn, refer the case to this Court.

{S0684828.5}　　　　　2

both the Debtor and S&S while seeking another forum to bring arguments that have already been raised by Mission in the Bankruptcy Case and rejected by this Court.  Moreover, in the New York Case, Mission seeks injunctive relief that is wholly inconsistent with and impairs the relief ordered by this Court.  Id. at p. 10 (In its prayer for relief, Mission requests: "An order permanently enjoining [S&S] from further interfering with the [Mission Contract].")  Accordingly, the Debtor and S&S request an order from this Court enjoining Mission from pursuing its claims in the New York Case.

In support of this Complaint, the Debtor and S&S state as follows:

1. This is an adversary proceeding commenced by the Debtor and S&S pursuant to Sections 105(a) and 362(a) title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rule 7001(7) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 65 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable hereto by Bankruptcy Rule 7065, seeking (i) extension of the automatic stay under Section 362(a) of the Bankruptcy Code and/or (ii) injunctive relief under Section 105(a) of the Bankruptcy Code, to enjoin Mission from asserting claims or otherwise attempting to exercise remedies against S&S in the New York Case that arise in or relate to the Bankruptcy Case.

2. This adversary action presents the requisite circumstances that justify the extension of the automatic stay and demonstrates that the Debtor and S&S are entitled to injunctive relief.

## THE PARTIES

3. The Debtor is a limited liability company organized under the laws of New Hampshire with its principal place of business located in Portsmouth, New Hampshire and

specializes in material innovation that, among other things, develops chemical-free cooling fabrics.

4. S&S is a limited liability company organized under the laws of New Hampshire with its principal place of business located in Hooksett, New Hampshire and specializes in the hotel business.  S&S holds a majority membership interest in the Debtor.  S&S is also the secured creditor and lender of the Debtor and the successful purchaser of certain of the Debtor's assets pursuant to this Court's order dated December 18, 2015.  The sale to S&S closed on December 18, 2015 [Docket No. 310].

5. Defendant Mission is a corporation organized under the law of the State of Delaware with its principal place of business located in New York, New York.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b) and (e) as this matter arises in, under and is related to a pending bankruptcy case.  This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (B) and (O).

7. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

8. This adversary proceeding is initiated under Bankruptcy Rule 7001(7) and the relief requested herein may be ordered pursuant to Bankruptcy Rule 7065 and Sections 105(a) and 362(a) of the Bankruptcy Code.

## BACKGROUND

9. On September 1, 2015, the Debtor filed a voluntary petition for relief with the Court under chapter 11 of title 11 of the Bankruptcy Code.

10. The factual background relating to the commencement of the Bankruptcy Case is set forth in detail in the Declaration of Kevin McCarthy in Support of Debtor's First Day Pleadings [Docket No. 16].

**The Court Properly Granted the Debtor's Motion to Reject
the Mission Contract Pursuant to Section 365 of the Bankruptcy Code**

11. On September 2, 2015, the Debtor filed Debtor's Omnibus Motion to Reject Certain Executory Contracts Nunc Pro Tunc to the Petition Date ("Rejection Motion") [Docket No. 35]. In the Rejection Motion, the Debtor identified numerous executory contracts to which it was a counterparty and that it determined in its business judgment to be burdensome to the estate. Id. The Debtor determined that rejecting the executory contracts described in the Rejection Motion would benefit the Debtor's estate and its constituents. Id.

12. The Co-Marketing and Distribution Agreement by and between the Debtor and Mission (the "Mission Contract") was included in the list of executory contracts to be rejected pursuant to the Rejection Motion.

13. The Rejection Motion was filed in connection with the Debtor's Motion to Approve Procedures in Connection With Sale of Substantially All of Debtor's Assets (the "Sale Motion") [Docket No. 34] by which the Debtor set forth the terms of its proposed sale of substantially all of its assets free and clear of any liens, claims and encumbrances.

14. On September 11, 2015, Mission filed its Objection to the Rejection Motion and Sale Motion (the "Opposition to Rejection Motion") [Docket No. 99]. In the Opposition to Rejection Motion, Mission argued, among other things, that, by its election under Section 365(n) of the Bankruptcy Code, it retained certain rights under the Mission Contract post-rejection as a non-debtor licensee. Mission argued further that the Debtor could not sell its assets free and clear of the protections afforded to Mission under Section 365(n) of the Bankruptcy Code.

Mission took the position that the rights provided a non-debtor under Section 365(n) of the Bankruptcy Code act as a complete barrier to the Debtor's right to sell or otherwise license its intellectual property rights to the proposed purchaser to the extent those intellectual property rights are otherwise embodied in the Mission Contract.

15. On September 17, 2015 the Debtor filed a Reply to the Opposition to Rejection Motion [Docket No. 122] which sought to address certain of the issues raised in the Opposition to Rejection Motion, including the applicability and scope of Mission's Section 365(n) election. On September 30, 2015, in advance of the hearing on the Rejection Motion and Sale Motion, the Debtor submitted a Memorandum of Law [Docket No. 179] to further address the Section 365(n) issues.

16. On October 2, 2015, after notice and a hearing, the Court entered its order on the Rejection Motion, authorizing the Debtor's rejection of the Mission Contract *nunc pro tunc* to the Petition Date (the "Rejection Order") [Docket No. 188]. The Rejection Order, however, made the rejection of the Mission Contract "subject to [Mission's] election to preserve its rights under 11 U.S.C. § 365(n)."

17. Mission did not appeal the Rejection Order.

18. On October 15, the Debtor filed the Debtor's Motion for Determination of the Applicability and Scope of Mission Product Holdings, Inc.'s Election Pursuant to 11 U.S.C. § 365(n)(1)(B) (the "365(n) Motion")[Docket No. 211]. By the 365(n) Motion, the Debtor requested that the Court clarify that (i) the limited applicability and scope of Mission's 365(n) election pursuant to the express terms of the Mission Contract provided Mission post-rejection rights as a non-exclusive licensee of only such patents, trade secrets and copyrights as are granted in the Mission Contract and (ii) Mission retains no protectable interest in the Debtor's

trademarks or trade names nor does it retain the Exclusive Products and the Exclusive Territory (each as defined in the Mission Contract).

19. On October 27, 2015, Mission filed an opposition to the 365(n) Motion ("Opposition to 365(n) Motion")[Docket No. 231].

20. The Debtor filed a reply in response to the Opposition to the 365(n) Motion on November 2, 2015 [Docket No. 232].

21. After notice and a hearing was held on November 3, 2015, the Court issued a Memorandum and Order Granting 365(n) Motion each dated November 12, 2015 (the "Order Granting 365(n) Motion")[Docket Nos. 239 and 240.]  By the Order Granting 365(n) Motion, this Court ruled that (1) Mission's election pursuant to 11 U.S.C. § 365(n) provides Mission rights as a non-exclusive licensee only as to any patents, trade secrets, and copyrights as are granted to Mission in section 15(b) of the Mission Contract; (2) Mission's election pursuant to 11 U.S.C. § 365(n) provides no protectable interest in the Debtor's trademarks or trade names; and (3) Mission's election pursuant to 11 U.S.C. § 365(n) provides no protectable interest in the Debtor's "Exclusive Products" and the "Exclusive Territory" as those terms are defined in the Mission Contract.

22. On November 13, 2015, Mission filed an appeal of the Order Granting 365(n) Motion with United States Bankruptcy Appellate Panel for the First Circuit.  The appeal is pending, but no briefs have been filed yet.

**The Court Properly Granted the Debtor's Sale Motion**
**Pursuant to Section 363 of the Bankruptcy Code**

23. On September 2, 2015, the Debtor filed the Sale Motion.

24. After notice and a hearing, on October 8, 2015, the Court allowed the Debtor's motion to approve the sale procedures and entered the Order (A) Approving Procedures in

Connection with the Sale of Substantially all of Debtor's Assets; (B) Scheduling Related Auction and Hearing to Consider Approval of Sale; (C) Approving Procedures Related to the Assumption and Assignment of Executory Contracts and Unexpired Leases; (D) Approving the Form and Manner of Notice Thereof; and (E) Granting Related Relief (the "Sale Procedures Order") [Docket No. 194].

25. Mission participated in the hearings to consider the entry of the Sale Procedures Order, provided comments to the form of order submitted to the Court and did not oppose its entry or file an appeal of the order.

26. On November 5, 2015, in accordance with the Sale Procedures Order, an auction was held. Only S&S and Mission participated as bidders in the auction. At the conclusion of the auction, S&S was declared the successful bidder. On November 6, 2015, the Debtor filed the Debtor's Notice of Successful Bidder [Docket No. 235].

27. On November 12, 2015, Mission filed: (i) Mission Product Holdings, Inc.'s Challenge to Credit Bid of Pre-Petition Credit of Schleicher & Stebbins Hotels, LLC [Docket No. 241] (the "Mission Credit Bid Challenge") and (ii) Mission Product Holdings, Inc.'s Objection to Conduct of Auction and Sale, as amended [Docket No. 246] (the "Mission Sale Objection"). In the Mission Objection, Mission asserted, among other things, that (i) the Chapter 11 case was filed in bad faith, (ii) the contemplated sale was for notional consideration, (iii) that the sale constitutes a sub rosa plan, and (iv) that S&S acted in bad faith in connection with the Auction and the Debtor-in-Possession Financing, and is unable to be a good faith purchaser.

28. On November 13, 2015, Michael Askenaizer, the examiner appointed by this Court upon Mission's and the U.S. Trustee's request (the "Examiner") submitted the Examiner's

{S0684828.5}                                                8

Final Report.  By motion approved by this Court, the Examiner's Final Report was amended and resubmitted to the Court [Docket No. 270].

29. The Examiner's Final Report and response to Mission' Sale Objection concluded, among other things, that the sale process was conducted in an appropriate manner and that there was no evidence of and that he disagreed with any assertion of collusion and that S&S did not act in good faith.  <u>See</u>, <u>generally</u>, Examiner's Final Report and Examiner's Response to Mission's Sale Objection [Docket No. 257] at pp. 11-12.

30. At Mission's insistence, an evidentiary hearing was held to consider approval of the Sale Motion and the Mission Credit Bid Challenge and Mission Objection.  The Sale Hearings were held on November 18, 2015 and November 23, 2015.  In support of the Sale Motion, the Debtor called Vince Colistra from Phoenix, Kevin McCarthy and Richard Ferdinand the CEO and CFO of the Debtor, respectively, and S&S called Mark Stebbins.  Mission did not call any witnesses.  At the conclusion of the Sale Hearing, the Court directed the parties to submit proposed orders for the Court's consideration.

31. On December 1, 2015, the Debtor filed the Debtor's Post-Hearing Brief in Support of Sale [Docket No. 279], submitting a proposed form of sale order for the Court's consideration.  S&S filed its Post-Hearing Statement in Support of the Sale Motion and Entry of Proposed Sale Order [Docket No. 280].

32. Also on December 1, 2015, Mission filed its Proposed Findings of Fact, Conclusions of Law, Orders for Relief [Docket No. 278].

33. On December 18, 2015, this Court issued its Memorandum and Order granting the Sale Motion and approving the sale to S&S and overruling and denying all of Mission's objections to the Sale Motion.  For purposes of this Complaint and the New York Case, key

findings and rulings of this Court include: (1) the purchase price was fair and reasonable, (2) the Chapter 11 case was not filed in bad faith, (3) in connection with the auction and Debtor-in-Possession Financing, S&S acted at all times in good faith and arms' length and did not act in bad faith, (4) there was no evidence of fraud, collusion, or any other tainting of the sale process in the record, (5) S&S was a good faith purchaser and entitled to the protections afforded by Section 363(m) of the Bankruptcy Code, and (6) the sale was approved and the Debtor and S&S were authorized to immediately consummate the sale.

34. On December 18, 2015, the sale closed and the Debtor filed the Notice of Closing thereafter [Docket No. 310].

35. On December 28, 2015, Mission filed an appeal of the Sale Order with United States Bankruptcy Appellate Panel for the First Circuit.

**Mission Improperly Attempts to Circumvent the Rulings
of this Court by Filing the New York Case**

36. Not satisfied with this Court's prior rulings or the Examiner's Final Report that favored the sale to S&S, on the eve of the hearing to approve the sale (November 17, 2015), Mission sought an alternative forum to present the very arguments that Mission made in this Court and that this Court found unpersuasive. By the New York Case, Mission initiated a parallel proceeding that is a transparent attempt to circumvent this Court's rulings and collaterally attack the Debtor's Chapter 11 proceeding.

37. The basis of the New York Case is identical to Mission's complaints regarding the sale to S&S that Mission already raised in this Court. Compare New York Case Complaint and Docket No. 246.

38. Specifically, Mission argues in both forums, among other things, that (i) S&S improperly induced the Debtor into filing its Chapter 11 petition, (ii) the Debtor and S&S

colluded to use the Bankruptcy Case for the impermissible purpose of rejecting the Mission Contract and to conduct a sale for S&S's benefit for notional consideration, (iii) the auction and resulting determination that S&S submitted the superior bid is evidence of bad faith and collusion by and between the Debtor and S&S, and (iv) the Chapter 11 case was filed in bad faith.  In the Sale Order, this Court rejected each of these arguments.

39. In addition to these parallel, repetitive arguments that this Court has rejected, Mission also seeks in the New York Case an alternative ruling on the Mission Contract rejection, coupled with injunctive relief, requesting that S&S be enjoined from "further interfering" with the Mission Contract.  See New York Case Complaint at Prayer for Relief (a).  This Court has already ruled that the Mission Contract was rejected as of September 1, 2015.  Mission did not appeal that order.

40. In addition, one day prior to filing the New York Case, Mission filed its proof of claim with this Court asking for much of the same relief it is now seeking from S&S in the New York Case.  See Mission Proof of Claim, a copy of which is attached hereto as **Exhibit B**.  In particular, Mission seeks $4,160,000 in damages from the Debtor.  See id.  That amount includes $450,000 from "intentional misconduct (including legal costs) stemming from "mediation, arbitration, [and] bankruptcy," and $210,000 from the execution of two contracts alleged to breach the exclusivity provisions in the agreement.  See id. at Exhibit A to Proof of Claim.  These are the very same contracts and instances of misconduct for which Mission seeks damages in the New York Case.  See New York Case Complaint ¶¶17-22.  Accordingly, these remaining Mission claims in the New York Case have already been presented by Mission to his Court and will be considered by this Court in the pending Chapter 11 case.

**Mission Should Be Enjoined From Pursuing the New York Case**

41.     Through the New York Case, Mission is mounting an improper collateral attack of the proceedings before and orders entered by this Court and Mission also seeks the same damages against S&S asserted in its proof of claim in the Bankruptcy Case.

42.     Aside from the obvious danger of inconsistent judgments, allowing the New York Case to proceed would undermine the Debtor's Chapter 11 case and permit Mission to challenge the proceedings in this Court in a foreign forum and seek relief that this Court has already ruled it is not entitled to.

43.     Additionally, S&S has filed a claim for indemnification to which it is entitled from the Debtor, including on account of the New York Case. As a member of the Debtor, S&S has indemnification rights under the organizational and operating documents of the Debtor. S&S has asserted a claim for the full scope and amount of indemnification (including all rights of reimbursement of legal and other expenses) to which it is entitled from the Debtor under such documents and agreements and under applicable law. As a result, in further support of enjoining the New York Case, the estate will be impacted because of the Debtor's indemnity obligations.

### COUNT I
### INJUNCTIVE RELIEF UNDER SECTION 362(a)

44.     The Debtor and S&S repeat and reallege the allegations set forth in paragraphs 1 through 43.

45.     Section 362(a)(1) of the Bankruptcy Code operates as a stay, "applicable to all entities," of "the commencement or continuation … of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the

commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title."

46. Section 362(a)(3) of the Bankruptcy Code operates as a stay, "applicable to all entities," of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

47. As set forth above, unusual circumstances exist that require the extension of the automatic stay to S&S.

48. Because (i) the New York Case is a collateral attack on these proceedings and the orders entered by this Court, (ii) the New York Case will divert the attention of the Debtor from its Chapter 11 plan process and necessarily impose needless costs on the estate, (iii) any judgment entered against S&S could result in the depletion of assets of the Debtor's estate, the Debtor is entitled to an order extending the automatic stay under Section 362 of the Bankruptcy Code to enjoin Mission from proceeding against S&S.

## COUNT II
## INJUNCTIVE RELIEF UNDER SECTION 105(a)

49. The Debtor and S&S repeat and reallege the allegations set forth in paragraphs 1 through 48.

50. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Relief under Section 105 of the Bankruptcy Code is particularly appropriate in a Chapter 11 case when necessary to protect a debtor's ability to effectively confirm a plan and to preserve the property of a debtor's estate.

51. The Debtor and S&S are entitled to a preliminary injunction under Section 105(a) of the Bankruptcy Code, enjoining Mission from proceeding against S&S and the Debtor.

52. Unusual circumstances exist that demonstrate that the Debtor and S&S are entitled to an injunction, namely the attempt to collaterally attack these Chapter 11 proceedings through the New York Case.

53. In addition to the threat of inconsistent rulings by the two courts, allowing the New York Case to proceed would undermine the Debtor's Chapter 11 case and permit Mission to challenge the proceedings in and orders of this Court in a foreign forum and seek relief that this Court has already ruled it is not entitled to.

54. Mission will not suffer any harm by an injunction as it has been afforded a proper forum in the Bankruptcy Court to pursue its grievances. To the extent that Mission suffers any harm, that harm will be greatly outweighed by the harm that will be suffered by the Debtor and S&S.

55. The Debtor and S&S are also entitled to a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 as: (a) S&S has a substantial likelihood of success in the New York Case, (b) there is a substantial risk of irreparable harm to the Debtor and S&S if the Mission is not enjoined, (c) the harm to the Debtor and S&S outweighs the potential harm to Mission, and (d) injunctive relief would not violate the public interest but would, instead promote public interest by upholding the integrity of the Chapter 11 proceedings and halt Mission's collateral attack on the orders of this Court.

**WHEREFORE,** for all the foregoing reasons, the Debtor and S&S respectfully request entry of an Order (i) granting a preliminary injunction enjoining Mission from continuing the New York Case and any action or legal proceeding (including, without limitation, any judicial, quasi-judicial, administrative or regulatory action, proceeding or process whatsoever), including by way of direct claim, counterclaim, cross claim, appeal or any other action against S&S or any

of its employees, affiliates, or principals related to the Bankruptcy Case, (ii) awarding attorney's fees, costs, and interest in an amount to be determined, and (iii) granting such other relief as this Court deems just.

Dated: January 6, 2016

Respectfully submitted,

| OLD COLD, LLC<br>By its attorneys,<br><br>NIXON PEABODY LLP<br><br>_____<br>Daniel W. Sklar, Esq. BNH# 01443<br>Christopher Desiderio (PHV)<br>Nixon Peabody LLP<br>900 Elm Street<br>Manchester, New Hampshire 03101<br>Phone: (603) 628-4000<br>dsklar@nixonpeabody.com | SCHLEICHER & STEBBINS HOTELS, L.L.C.<br>By its attorneys,<br><br>SHEEHAN PHINNEY BASS + GREEN PA<br><br>_____<br>Christopher M. Candon, Esq. BNH# 07285<br>Sheehan Phinney Bass + Green PA<br>1000 Elm Street, P.O. Box 3701<br>Manchester, New Hampshire 03105-3701<br>Phone: (603) 627-8168<br>ccandon@sheehan.com |